UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

CRIMINAL CASE NO. 04-80857
HON. LAWRENCE P. ZATKOFF

v.

D-13 KELLY DAWE,

    Defendant.
_____/

**SENTENCING OPINION**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 15, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

On November 8, 2007, Defendant appeared before this Court and pled guilty to violating four conditions of her supervised release. After accepting Defendant's guilty pleas on the supervised release violations, the Court sentenced Defendant to 42 months imprisonment. This Sentencing Opinion explains why.

**II. BACKGROUND**

On August 31, 2005, Defendant pled guilty to Count I of the Indictment (Conspiracy to Distribute a Controlled Substance) pursuant to a Rule 11 Plea Agreement. The Conspiracy charge carries with it a five year mandatory minimum sentence, but Defendant qualified for the safety valve exception pursuant to U.S.S.G. § 2D1.1(b)(7). Under the Rule 11, the parties determined the

advisory Guideline Range for Defendant was 46-57 months, based on a Total Offense Level of 23 and a Criminal History Category of I. The Presentence Investigation Report ("PSR") for Defendant calculated her advisory Guideline Range at 37-46 months, based on a Total Offense Level of 21 (a two-level decrease was recommended for being a minor participant) and a Criminal History Category of I.

At Defendant's sentencing on November 7, 2005, the Court first ruled that the applicable advisory Guideline Range was 46-57 months, finding that the two-level decrease to Total Offense Level (for being a minor participant) recommended by the Probation Department was not applicable. The Government thereafter made a U.S.S.G. § 5K1.1 motion and asked the Court to imprison Defendant for 12 - 24 months. The Court then departed downward even further and imposed a sentence of three years probation, with the first nine months to be served in a community correction center. The Court believed that such a sentence best served the interests of justice for a number of reasons:

1. Defendant was only 17 when she committed the crimes for which she was convicted;

2. Defendant participated in the conspiracy with (and likely solely because of) her relationship with her then-boyfriend and fellow co-defendant, Herman Burch;

3. Defendant courageously agreed to testify at trial in this case, which involved many defendants;

4. By the time of the plea and sentencing, Defendant was employed and had many very good letters of recommendation; and

5. Defendant was young, had a supportive family and, with a limited term and manner of incarceration, appeared to be an excellent candidate for using the experience to create a better life for herself and become a productive member of society.

Without question, Defendant was given a golden opportunity.

Defendant completed her nine month term in the community correction center on September

1, 2006, with that period being relatively free of problems (the exception being a positive test for opiates shortly after entering the center). Once the community correction center term ended, however, Defendant quickly turned to drugs and conditions ripe for drug abuse. She stopped reporting to work daily as she had while in the community correction center. In addition, she was using cocaine with her boyfriend/husband, and she was failing her mandatory drug screens. On November 2, 2006, the Court issued an Order modifying the conditions of Defendant's supervised release and directed that Defendant "shall reside in Heartline Residential Reentry Center for a period of up to 180 days and shall abide by all rules and regulations of the facility." Again, she completed this period with few problems until she had a positive test (marijuana) on April 17, 2007, just two weeks before her stay concluded. While Defendant was at the Heartline Residential Reentry Center ("Heartline"), concerns about her mental condition (re)surfaced. Defendant's supervised release was modified again on May 8, 2007, to provide that she "shall participate in a mental health treatment program as directed by the probation officer, if necessary."

Once Defendant left Heartline, she quickly quit the job she had while residing there, and she tested positive for marijuana on June 13, 2007. While she made some appointments with the probation department and drug treatment clinics after June 13, 2007, those made appointments have been few and far between. Defendant did not report for her individual treatment appointments or random drug testing in July, August or September. In essence, Defendant abandoned all her supervised release responsibilities by the end of July 2007, and she continued to do so up until the time the Court issued a warrant for her arrest on October 9, 2007. In addition, Defendant had, by her own admission, lost the support of her family and other mechanisms that were so prominent in her life at the time the Court sentenced her on November 7, 2005.

## III. SENTENCING GUIDELINES

For purposes of Defendant's supervised release violations, the advisory guideline range from the Policy Statement at U.S.S.G. § 7B1.4 is a term of imprisonment of three to nine months. In this case, however, the Court believes that Application Note Four to U.S.S.G. § 7B1.4 is particularly relevant. Application Note Four states: "Where the original sentence was the result of a downward departure (*e.g.*, as a reward for substantial assistance), or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted." As noted above, Defendant's original Guideline Range was 46-57 months, and she received a sentence of three years probation, with the first nine months to be served in a community correction center.

## IV. SENTENCING FACTORS

When sentencing a defendant, the Court must consider the relevant factors from 18 U.S.C. § 3553, and articulate the reasons for its sentencing decision. *United States v. McBride,* 434 F.3d 470, 476 (6th Cir. 2006). The Court will now analyze the relevant factors as they relate to this Defendant.

**1. The Nature and Circumstances of the Offense**

Defendant, now a 23 year old woman, was convicted of conspiracy to distribute a controlled substance (cocaine). For the reasons described above, this Court showed tremendous compassion and mercy on Defendant at the time of her original sentencing on November 7, 2005. In doing so, the Court departed significantly from the advisory Guideline Range. Since Defendant left the community correction center on September 1, 2006, however, she repeatedly (and admittedly): used

4

illegal substances, failed drug tests, failed to maintain contact with her probation officer and failed to participate in substance abuse programs. She has shown a complete disregard for the probation department and officers who, like this Court, her attorneys and the government attorneys, have bent over backward to give her the opportunity to have her conviction be but a speed bump in the course of her life.

**2.     The History and Characteristics of the Defendant**

Defendant's history and characteristics are well documented above.

**3.     The Seriousness of the Offense**

The Court considers the instant offense, while not necessarily a dangerous one in itself, to be very serious. Defendant's conduct has become increasingly riddled by substance abuse and disregard for the programs and persons in place to help her. As Defendant stated at her most recent sentencing, only since she was arrested last month has she had time to think about her life and where it is headed.

**4.     Promote Respect for the Law and Afford Adequate Deterrence to Criminal Conduct**

Although Defendant does not have much of a criminal history other than that associated with the underlying conviction, her conduct since completing her nine months at the community correction center has been erratic, dangerous to herself and inconsistent with the conduct of a law-abiding citizen. More significantly, the Court is resigned to the conclusion that Defendant has not realized the break she was given. Rather, she has turned her back on it to return to the world of illegal drugs. Defendant got a break at her sentencing and the Court twice modified the conditions of her supervised release so that she would not be sent to prison for violating her supervised release. In refusing to take advantage of those opportunities, the Court finds that Defendant has demonstrated

5

a lack of respect for the law. In addition, by doing so, Defendant has demonstrated that imposing minimal terms of imprisonment simply will not afford adequate deterrence to further criminal conduct for her.

5.   **Protect the Public From Further Crimes of the Defendant**

Defendant's conduct thus far appears to have been more threatening to herself than to the public at large. Based on the activities of Defendant since she completed her nine month stay in the community correction center, however, the Court believes that Defendant has been and remains on the precipice of returning to the drug trade to support her drug habit and/or herself.

6.   **Need to Avoid Unwarranted Disparities**

Although a sentence of 42 months exceeds the advisory guideline range for violating conditions of supervised release, this sentence is still below the applicable advisory Guideline Range for Defendant's underlying conviction (46-57 months). Significantly, Defendant served only a very small portion of the original Guideline Range and, as such, there was a significant disparity between her original sentence and that of other defendants with the same criminal history. By sentencing Defendant to 42 months, the Court is still sentencing Defendant to a term of imprisonment that is less than the minimum period under the original Guideline Range. In fact, even if the nine month term in the community correction center is added to the 42 month sentence, the total period of incarceration is still in the middle of the original advisory Guideline Range.[1]

---

[1] The Court notes that it mistakenly indicated at the sentencing hearing that the 42 month sentence was in the middle of the original Guideline Range. At that time, the Court was looking at the recommended Guideline Range proposed in the PSR and not the Guideline Range the Court ultimately determined was applicable, as stated on the record at the November 7, 2005, sentencing.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court concludes that the appropriate sentence for this Defendant for violating the conditions of her supervised release is 42 months.

IT IS SO ORDERED.

                                      s/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: November 15, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 15, 2007.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290